**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Sara Yvonne Fitzgerald, | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No.: <u>1:24-cv-4389-MGL-SVH</u> |
| *vs.* | ) | |
| | ) | |
| Kimberly-Clark USA, LLC; | ) | **COMPLAINT** |
| *Defendant*. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Sara Yvonne Fitzgerald ("Plaintiff Fitzgerald") and makes the following allegations for her Complaint against the Defendant Kimberly-Clark USA, LLC. ("Defendant Kimberly-Clark"), showing this honorable Court as follows:

### INTRODUCTION

1. Defendant Kimberly-Clark is a manufacturer of well-known brands of hygiene products, such as Kleenex, Scott, Cottonelle, and Huggies, among others.

2. Defendant Kimberly-Clark operates a manufacturing facility in Aiken County, South Carolina where well-known products such as Kleenex facial tissue, Cottonelle and Scott bath tissues, Huggies diapers, and other related products are made.

3. Plaintiff was employed at Defendant Kimberly-Clark's Aiken, South Carolina facility from 2014 until 2022.

4. Over the course of 2021 and into 2022, Defendant Kimberly-Clark developed and implemented various policies and protocols regarding the COVID-19 virus at its Aiken, South Carolina manufacturing facility.

5. While Defendant Kimberly-Clark ultimately did not adopt a mandatory COVID vaccination policy, Defendant Kimberly-Clark did consider the implementation of such a

policy, and leadership within Defendant Kimberly-Clark was strongly in favor of company-wide vaccination of its employees.

6. Defendant Kimberly-Clark undertook strong efforts to encourage company-wide vaccination, including making financial incentives for obtaining vaccination.

7. The Plaintiff began working as a Human Resources Generalist at the Defendant Kimberly-Clark's Aiken, South Carolina facility in August, 2014.

8. In 2022, Plaintiff received a positive 2021 Performance Assessment's performance successfully met all expectations of the Defendant, and in the beginning of 2022 she along with a raise in pay and a bonus.

9. In January, 2022 Defendant Kimberly-Clark announced that it was mandating that all employees undergo mandatory COVID testing on a weekly basis as a condition of continuing their employment ("Testing Mandate").

10.    Many of Defendant Kimberly-Clark's employees, including Plaintiff Fitzgerald, had objected to receiving vaccinations because of their sincerely-held religious beliefs.  Some employees' religious beliefs (including the Plaintiff's religious beliefs) are not consistent with either COVID vaccination or the insertion of foreign bodies into the human body for the purpose of COVID testing ("Insertive Testing").

11.    As an employee of the Human Resources department, Plaintiff Fitzgerald was immediately involved in Defendant Kimberly-Clark's creation and implementation of new COVID policies involving mandatory vaccination and testing.    When she brought forth concerns about employees' religious concerns relating to these subjects (including her own), they were summarily dismissed by management.

12.    Defendant Kimberly-Clark ultimately decided not to mandate vaccination for its employees, after strong consideration of such a mandate.

13.    Based upon comments made by leadership and legal counsel of Defendant Kimberly-Clark in a meeting with Human Resources on or around January 20, 2022, it was clear to Plaintiff that Defendant Kimberly-Clark never intended to make any sort of reasonable accommodation for employees who objected to Insertive Testing based upon religious grounds.

14.    On February 18, 2022 the Plaintiff filed a request for a religious exemption with Defendant Kimberly-Clark to be exempt from taking the Insertive Testing, seeking approval from her superiors for a saliva test, a noninvasive form of testing for COVID which did not involve inserting a foreign object into her body.

15.    From February 18, 2022 until February 24, 2022, Defendant Kimberly-Clark and its Human Resources team met and repeatedly stated the pre-determined position to the Plaintiff that they did not intend to provide for any exemption or accommodations for employees who did not want to participate in Insertive Testing, based upon religious grounds.

16.    Having employees participate in a non-invasive saliva-based test was a reasonable accommodation that Defendant Kimberly-Clark could have made to the Plaintiff and others similarly situated, but did not.

17.    On February 24, 2022, Defendant Kimberly-Clark relayed to the Plaintiff that all employees who objected to Insertive Testing (including her) would be sent home on leave. The decision was made by Defendant Kimberly-Clark to make employees use accrued paid time off or vacation until it could announce a decision as to how to handle employees who refused Insertive Testing.   Plaintiff was sent home, and worked remotely until March 8, 2022.

18.     Based on Defendant Kimberly-Clark's implementation of the Testing Mandate and its refusal to grant Plaintiff Fitzgerald her request for a religious exemption, without any reasonable accommodation, Plaintiff Fitzgerald brings claims under Title VII for religious discrimination, and related state claims under the South Carolina Human Rights Act for religious discrimination.

19.     Only two weeks after sending the Plaintiff home, Defendant Kimberly-Clark reversed the Insertive Testing mandate for employees, demonstrating that the denials of the requests for religious exemption/accommodations were unnecessary or a pretext.

20.     On March 14, 2022, Defendant was informed that she was alleged to have violated Defendant Kimberly-Clark's Code of Conduct.   This alleged violation was ultimately regarding her position on Insertive Testing and her personal religious beliefs which were not aligned with Defendant Kimberly-Clark's mandates on Insertive Testing.

21.     Defendant was terminated on March 24, 2022 by Defendant Kimberly-Clark, citing that her values did not align with that of the company.

22.     Based on Defendant Kimberly-Clark's termination of Plaintiff Fitzgerald based on her request for a religious exemption, without any reasonable accommodation, Plaintiff Fitzgerald brings claims under Title VII for retaliation, and related state claims under the South Carolina Human Rights Act for retaliation.

## JURISDICTION AND VENUE

23.     Plaintiff Fitzgerald has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following

closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1). A copy of the EEOC right-to-sue letter is attached hereto as "Exhibit A" to this Complaint.

24.    This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiff Fitzgerald's state law claims pursuant to 28 U.S.C. §1367.

25.    This Court has personal jurisdiction over Defendant Kimberly-Clark as it is a for-profit corporation operating in and located in Aiken County, South Carolina.

26.    Defendant Kimberly-Clark is subject to the provisions of Title VII because Defendant Kimberly-Clark employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b).

27.    Venue is proper in the District of South Carolina under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in South Carolina, and Defendant Kimberly-Clark conducts business in the State of South Carolina.

28.    The Aiken Division is proper for assignment of this case as: the Plaintiff is a resident of Aiken County, South Carolina; the Defendant operates its business in Aiken County, South Carolina; and the actions giving rise to this cause of action occurred in Aiken County, South Carolina.

**PARTIES**

29.    Plaintiff Fitzgerald is a former employee of Defendant Kimberly-Clark.

30.    Defendant Kimberly-Clark is a South Carolina for-profit limited liability company headquartered in Wisconsin, which operates manufacturing facilities across the United States including one in Aiken County, South Carolina.

31.     Plaintiff Sara Yvonne Fitzgerald is a resident of Aiken County, South Carolina who worked as a Human Resources Generalist for Kimberly-Clark for more than seven years.

32.     Plaintiff Fitzgerald requested a religious exemption from the Testing Mandate or, in the alternative, a reasonable accommodation by an alternate to Insertive Testing and it was denied.

33.     Plaintiff Fitzgerald is a Christian who believes in God the Father, Son, and Holy Spirit, and that as a believer she asked the Lord to come into her life. Now the Holy Spirit dwells in her and she believes her body is a temple for the Holy Spirit that she is duty bound to honor. She does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary. Accordingly, it violates her conscience to take the COVID vaccine or to engage in weekly Insertive Testing or sign a release of information that gives out her medical information.

34.     Defendant Kimberly-Clark terminated Plaintiff Fitzgerald's employment on March 18, 2022 based on her refusal to take the Covid-19 vaccine or submit herself to weekly Insertive Testing. Plaintiff Fitzgerald filed a charge with the EEOC and received a Right to Sue letter from EEOC dated May 17, 2024 ("Exhibit A").

35.     Plaintiff Fitzgerald has had glowing positive job performance reviews, including after the Covid-19 Pandemic was underway, including a positive 2021 Performance Assessment for the period 1/1/2021 through 12/31/2021, a copy of which is attached hereto as "Exhibit B," which was delivered to the Plaintiff by her superiors within Defendant Kimberly-Clark at the beginning of February, 2022.

36.     Defendant Kimberly-Clark noted in "Exhibit B" that the Plaintiff "Successfully Met Expectations," was "instrumental to the HR team and site," was "very knowledgeable and

trusted at the site," had "done a great job," "worked diligently," "did well," "delivered," and "had exceptional follow up." In Defendant's own words, the Plaintiff successfully met each of the "One K-C Behaviors" by "[having] the trust of the employees not only in her work area, but in other areas of the mill," "[doing] well with prioritizing actions to drive results," "run[ning] CTEC very well, "ensur[ing] that the HR team is consistently following our standards," and "[working] diligently to satisfy her customers" with "exceptional follow up," building a relationship that "will be instrumental in helping the site transition to the new service model."

37.     As a result of the behaviors described within "Exhibit B," the Plaintiff was given a pay raise, and a bonus.

## FACTS

38.     During the pandemic in 2020 and 2021, Plaintiff Fitzgerald worked and performed well for Defendant Kimberly-Clark. At that time, Plaintiff Fitzgerald, while unvaccinated and while not receiving Insertive Testing, continued to successfully meet expectations of her job while employed by Defendant Kimberly-Clark.

39.     When Covid-19 vaccines first became available in December 2020, Defendant Kimberly-Clark considered a mandatory vaccination policy.

40.     Several employees of Defendant Kimberly-Clark sought to be exempt from any mandatory vaccination on the basis of religion, and submitted written requests to Defendant Kimberly-Clark to be exempt from vaccination.

41.     Defendant Kimberly-Clark recognized that some of its employees would have valid religious or other protected objections to taking the vaccine, and accordingly, Defendant Kimberly-Clark did not mandate vaccination.

42.     Ultimately, Defendant Kimberly-Clark strongly encouraged, but did not require, its employees to get vaccinated.  This included the providing of financial incentives to employees who did get vaccinated.    Plaintiff did not receive any such financial incentive.

43.     Up until her termination following the acts complained of herein, Plaintiff had received no prior discipline from Defendant Kimberly-Clark, and had in fact just received a stellar performance review, "Exhibit B."

44.     However, the week that it issued "Exhibit B" to the Plaintiff, Defendant Kimberly-Clark decided that it would implement a Testing Mandate as an alternate to mandatory vaccination.

45.     The Testing Mandate, rolled out in phases, required that all Kimberly-Clark employees receive Insertive Testing, or else the employees would be considered noncompliant, later placed on unpaid leave, and eventually terminated.

46.     On January 20, 2022, in a meeting with human resources and the leadership team at Defendant Kimberly-Clark's Aiken mill, the Plaintiff and others had many questions and concerns about mandatory Insertive Testing.   When Plaintiff inquired what accomodations would be made for employees who objected to Insertive Testing, Andrea Prescott, Plaintiff's superior, responded that they would be sent home, that each day would count as an unexcused absence occurrence, and that on the sixth occurrence they would be automatically terminated.

47.     When asked specifically by the Plaintiff of how Defendant Kimberly-Clark would consider an exemption or alternative to Insertive Testing on religious grounds, Ms. Prescott relayed that she was unsure that refusal of Insertive Testing would be allowed, but that she would inquire further within the company leadership.

48. Mandatory Testing was scheduled to begin on January 20, 2022, but was ultimately delayed until February 2, 2022. This testing requirement was not automatic or immediate for all employees, but was phased in for different employees at different times in the weeks that followed.

49. Following the beginning of Defendant Kimberly-Clark's Mandatory Testing policy, several employees came to the Plaintiff in her role as an HR Generalist voicing religious and other protected concerns with Insertive Testing, asking about options or alternatives. Plaintiff passed this information along to Ms. Prescott, who again said that she would get back to her.

50. In the two weeks between February 2 and February 14, 2022, Ms. Prescott advised the Plaintiff that any employees (including herself) who sought to have a religious exemption or accommodation from Insertive Testing would need to fill out a form, the same that was used by Defendant Kimberly-Clark for employees who had previously sought exemption from a proposed vaccination mandate.

51. On February 16, 2022, on a call with human resources leadership, it was again expressed by Defendant Kimberly-Clark that it did not intend to accommodate or exempt any employes from Insertive Testing.

52. On or about February 18, 2022, Plaintiff submitted a request for religious exemption from Insertive Testing for herself and, in the scope of her employment, for others who had requested the same. At that time, Plaintiff relayed to Ms. Prescott the availability of a non-insertive, alternate, saliva test, which would not compromise her religious beliefs.

53. On February 24, 2022, the human resources team met with Ms. Prescott to review the Plaintiff's and other employees' requests for religious exemption/accommodation to

mandatory Insertive Testing.   Prior unresolved requests from employees to not have to comply with a proposed mandatory vaccination policy were deemed moot at that time, since Defendant Kimberly-Clark had then abandoned the idea of mandatory vaccination.

54.    At that February 24, 2022 meeting, Defendant Kimberly-Clark's representative advised the human resources department that all requests for religious exemption or accommodation would be summarily denied, and that all non-compliant employees should be removed from the site.

55.    Ms. Prescott relayed to the Plaintiff that it was determined later that day that noncompliant employees would not be able to use paid time off or vacation time when sent home.   When Plaintiff raised the point that they were treating employees who had sought a protected accommodation differently, Ms. Prescott's decision on that issue reversed course.

56.    Plaintiff was sent home, initially told to use vacation time for her absences, but then asked to work from home due to the demands of the job.   Plaintiff worked from home from February 28, 2022 through March 4, 2022.

57.    On March 4, 2022, Ms. Prescott informed the Plaintiff that Defendant Kimberly-Clark might be reconsidering its policy on mandatory testing.   Again, Ms. Prescott was asked by the Plaintiff about the reasonable accommodation of a saliva test.

58.    Both the saliva-based Antigen and PCR (polymerase chain reaction) tests for the COVID virus are a highly reliable, non-insertive methods of testing, and were reasonably available to obtain and take in February, 2022.

59.    Both a saliva-based Antigen and PCR covid tests would have been a reasonable accommodation for the Defendant Kimberly-Clark to make to accommodate the Plaintiff's

sincerely-held religious beliefs while meeting any purported needs it had for requiring testing and

60.     On March 8, 2022, Ms. Prescott directed the Plaintiff to return to work from home, and that Defendant Kimberly-Clark was no longer going to require mandatory Insertive Testing.

61.     The Plaintiff resumed work for Defendant Kimberly-Clark from March 9, 2022 through March 14, 2022.

62.     On March 14, 2022, Ms. Prescott informed the Plaintiff that a code of conduct complaint had been filed against her, and asked for her to leave the facility.   When asked, Ms. Prescott refused to inform the Plaintiff of the subject matter of the complaint or reveal the identity of the complainant.

63.     On March 18, 2022, Plaintiff received a phone call from Ms. Geno Marvel on behalf of Defendant Kimberly-Clark, who made inquiry of the Plaintiff of the details surrounding her requests for religious exemption from the mandatory testing policy, both on her own behalf as well as those requests submitted in the scope of her employment with human resources on behalf of other employees.   At that point, it was apparent that the "code of conduct" violation was the Plaintiff's protected activity of seeking religious accomodation or exemption from Insertive Testing.

64.     On March 24, 2022, Defendant Kimberly-Clark terminated the Plaintiff's employment, citing that the Plaintiff's values did not align with the K-C Behaviors.   Defendant Kimberly-Clark and specifically Ms. Prescott would not provide any other specific information to the Plaintiff, other than to disavow that the termination was due to the Plaintiff's religious beliefs.

65.    The K-C Behaviors, reflected in "Exhibit B," had been and were being successfully met by the Plaintiff when the Defendant Kimberly-Clark provided "Exhibit B" to the Plaintiff in the beginning of February, 2022.

66.    The code of conduct violations alleged by the Defendant Kimberly-Clark to justify the termination of the Plaintiff were pretextual, and the true reason for her termination was her assertion of a request for religious exemption or accommodation from the company's mandatory testing program.

67.    As a result of Defendant Kimberly-Clark's policy on restricting religious exemptions regarding mandatory testing, no employees at the Defendant Kimberly-Clark's Aiken, South Carolina mill qualified for those exemptions, resulting in mass terminations for those who refused Insertive Testing.

68.    Plaintiff Fitzgerald filed a claim with the EEOC and received a Right to Sue letter from the EEOC dated May 17, 2024.

69.    Plaintiff Fitzgerald submitted good-faith statements of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination and submitting to weekly testing when she was not exhibiting any symptoms. Defendant Kimberly-Clark nevertheless denied Plaintiff Fitzgerald's request for an exemption and made no effort to accommodate her request for a religious exemption from Insertive Testing, which was clearly unnecessary because alternatives existed at the time, as well as because Defendant Kimberly-Clark ultimately terminated the testing mandate one month after instituting it.

70.    Further, Defendant Kimberly-Clark never considered allowing Plaintiff Fitzgerald to be accommodated by simply doing her job remotely or by taking a saliva-based test, both of which are reasonable accommodations.

71.    Defendant Kimberly-Clark took the position that all of its employees should get vaccinated, should get regularly tested through invasive means, and that employees such as the Plaintiff who objected to these policies on religious grounds should be terminated.

72.    Covid-19 vaccines were highly encouraged by Defendant Kimberly-Clark, who considered making them mandated, its the employees to be "fully vaccinated," despite the phrase "fully vaccinated" having a definition that has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

73.    Defendant pushed vaccination, issued financial incentives for vaccination, and for approximately one month from February through March, 2022 issued the Testing Mandate mandating its employees, including Plaintiff, take Covid-19 Insertive Testing, despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19. Dr. Deborah Birx, the former White House Covid Response Coordinator, stated in July 2022: "*I knew these vaccines were not going to protect against infection. And I think we overplayed the vaccines …*". Separately Dr. Birx also stated: "*When we make broad statements, when we say to people that these vaccines are going to protect against infection – one, it wasn't studied, …*". Dr. Birx made her statements in July 2022, approximately one year after President Biden stated: "*If you get vaccinated, you won't get Covid*."

74.    While many claimed that the COVID-19 pandemic was a pandemic of the unvaccinated, now the majority of people who have contracted COVID-19 were vaccinated to one extent or another.

75.    A very recent study indicates that people who took the COVID-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

76.    The numbers of patients hospitalized because of COVID-19 positive status has also been overstated because many were hospitalized for other causes, not because of COVID-19.

77.    Similarly, the numbers of people who were counted as having died from COVID-19 were overstated because many of them died with COVID-19, not from COVID-19.

78.    The numbers of COVID-19 deaths were also overstated by upwards of 25%, or even more.

79.    Dr. Deborah Birx stated "[b]ut let's be very clear: 50% of the people who died from the Omicron surge were older, vaccinated."

80.    Thus, the extent of COVID-19 infections, the severity of the COVID-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines and testing, and punishing the unvaccinated, as Defendant has done as set forth above.

81.    In June, 2021, long before the Defendant Kimberly-Clark conditioned continued employment of the Plaintiff and those similarly situated on participation in Insertive Testing, Governor Henry McMaster entered an executive order declaring that the State of South Carolina would cease to be under a previously-declared "state of emergency."   Governors in many other states recalled or ended the previously-declared "state of emergency" in their respective states around the same time – six months prior to the Defendant's Testing Mandate,

82.    On March 8, 2022, roughly thirty days after instituting its Testing Mandate, Defendant Kimberly-Clark announced that it would end testing of employees for COVID-19.

83.    As a result, Defendant Kimberly-Clark's remaining untested and unvaccinated employees are now treated similarly to tested and vaccinated employees, but Plaintiff Fitzgerald was treated discriminatorily.

84.    After making the decision to terminate the Plaintiff Fitzgerald, Defendant Kimberly-Clark suspended weekly testing. This means that those employees (like Plaintiff Fitzgerald) who would have had their religious exemptions granted, contingent on an accommodation such as remote work or alternate saliva testing, and were terminated between January 2022 and March 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Kimberly-Clark has now determined is unnecessary.

85.    Within a month of terminating Plaintiff, Defendant Kimberly-Clark was again hiring unvaccinated and untested employees, demonstrating further that the purported reasons for the Testing Mandate were not employee safety and that the stated reasons for Plaintiff's termination were a pretext.

**FIRST CAUSE OF ACTION**
**Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964**

86.    Plaintiff Fitzgerald restates and realleges all previous allegations as if fully set-forth herein.

87.    Defendant Kimberly-Clark is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

88.    Plaintiff Fitzgerald is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

89.     Plaintiff Fitzgerald has a sincerely held religious belief which prevented her from receiving the vaccine or submitting herself to Insertive Testing. Plaintiff Fitzgerald's beliefs arise because of her Christian beliefs.

90.     Plaintiff Fitzgerald informed Kimberly-Clark of the conflict between her religious belief and the Testing Mandate.

91.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. Id. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. Id. § 2000e (j).

92.     The law prohibits Defendant Kimberly-Clark from scrutinizing what it believes to be the sincerity of Plaintiff Fitzgerald's religious beliefs, or whether Plaintiff Fitzgerald's exercise of their beliefs is logical or as consistent as Defendant Kimberly-Clark believes the exercise of those religious beliefs should be.

93.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

94.     Plaintiff Fitzgerald, in her request for accommodation from the Defendant Kimberly-Clark's Testing Mandate, made an individualized request for exemption and/or accommodation.

95.     In response to Plaintiff Fitzgerald's request for reasonable exemption or accommodation of her sincerely-held religious beliefs, Defendant Kimberly-Clark and its leadership applied a uniform, blanket rule in rejecting nearly all such requests from employees

regarding this issue, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation.

96.    Despite the Plaintiff Fitzgerald's consistent requests for Defendant Kimberly-Clark to engage in an interactive process regarding her requests, and even in suggesting a saliva test as a specific accommodation for herself and other similarly-situated employees, Defendant Kimberly-Clark refused throughout to engage in the interactive process and instead rejected Plaintiff Fitzgerald's request for an exemption; it was "dead on arrival."

97.    As set forth above, Defendant Kimberly-Clark could have accommodated Plaintiff Fitzgerald's request for a religious exemption without suffering any undue hardship by having her continue to do her job remotely or by administering a non-invasive saliva test, which does not require the insertion of any foreign object into the body.

98.    Defendant Kimberly-Clark's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

99.    Because of Defendant Kimberly-Clark's unlawful actions, Plaintiff Fitzgerald suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION
### State law religious discrimination claim under the South Carolina Human Rights Act, S.C. Code Ann. § 1-13-10 et seq.

100.    Plaintiff Fitzgerald restates and realleges all previous allegations as if fully set-forth herein.

101.    S.C. Code Ann. § 1-13-10 et seq. prohibits discrimination in employment based on religion.

102.    Defendant Kimberly-Clark is an "employer" within the meaning of S.C. Code Ann. § 1-13-30.

103.    Plaintiff Fitzgerald is an "employee" within the meaning of S.C. Code Ann. § 1-13-30.

104.    Plaintiff Fitzgerald has a sincerely held religious belief which prevented her from receiving the COVID-19 vaccine, or submitting herself to Insertive Testing.

105.    Plaintiff Fitzgerald informed Defendant Kimberly-Clark of the conflict between her religious belief and the Testing Mandate and testing requirement.

106.    S.C. Code Ann. § 1-13-20 et seq. prohibits discrimination on the basis of religion and further requires covered employers to respect their employees' sincerely held religious beliefs.

107.    S.C. Code Ann. § 1-13-20 et seq. prohibits Defendant Kimberly-Clark from scrutinizing what it believes to be the sincerity of Plaintiff Fitzgerald's religious beliefs, or whether Plaintiff Fitzgerald's exercise of their beliefs is logical or as consistent as Defendant Kimberly-Clark believes the exercise of those religious beliefs should be.

108.    In response to the Plaintiff Fitzgerald's request for respect of her sincerely-held religious beliefs, Defendant Kimberly-Clark applied a uniform, blanket rule in rejecting Plaintiff Fitzgerald's and other similarly-situated employees' request for a religious exemption.  The initial reaction by leadership to deny such requests, prior to their receipt, evidences discriminatory intent.

109.    Despite Plaintiff Fitzgerald's request for Defendant Kimberly-Clark to engage in dialogue, Defendant Kimberly-Clark refused throughout to engage in the interactive process,

and instead rejected Plaintiff Fitzgerald for generalized reasons, sending her home until it ultimately reversed course in no longer mandating testing.

110.    Defendant Kimberly-Clark's actions constitute discrimination on the basis of religion in violation of S.C. Code Ann. § 1-13-20 et seq.

111.    Because of Defendant Kimberly-Clark's unlawful actions, Plaintiff Fitzgerald has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION
### Retaliation claim under Title VII of the Civil Rights Act of 1964

112.    Plaintiff Fitzgerald restates and realleges all previous allegations as if fully set-forth herein.

113.    Plaintiff Fitzgerald's seeking exemption or accommodation from Defendant Kimberly-Clark's Testing Mandate was an activity protected under federal law, as set forth herein. Plaintiff Fitzgerald's comments and questions during the human resources and leadership meetings regarding the development and implementation of mandates regarding vaccination and/or testing for COVID-19 were directed to protecting her rights and those of other similarly-situated employees to be free from religious discrimination.  This activity is protected activity under Title VII of the Civil Rights Act of 1964.

114.    Leadership within Defendant Kimberly-Clark mocked the Plaintiff's religious beliefs during the time that they were being expressed.

115.     Defendant Kimberly-Clark subjected the plaintiff to an adverse employment action, termination, as a direct result from her asserting her rights to refrain from Insertive Testing which was inconsistent with her sincerely-held religious beliefs.

116.    Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for Defendant Kimberly-Clark who is covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

117.    Defendant Kimberly-Clark, in response to the EEOC investigation prior to the issuance of the Right to Sue Notice ("Exhibit A"), took the position that in 2021, the Plaintiff had expressed her personal religious views regarding COVID-19, vaccines, and testing, to the point where she had to be cautioned about the subject by Ms. Prescott.   Defendant Kimberly-Clark also took the position that the Plaintiff was actively trying to encourage others to seek religious exemptions to avoid the Testing Mandate, alleging in their position statement that the Plaintiff "lacked credibility."   These assertions, however, is belied by the  2021 Performance Review, which was not issued to the Plaintiff until February, 2022, which noted *nothing* about such commentary and found the Plaintiff to be an "essential," "trustworthy," and "instrumental" employee who met all expectations of her job.

118.    The reasons given by Defendant Kimberly-Clark for the Plaintiff's termination – an alleged violation of the K-C code of conduct, are plainly pretextual, as no action other than that concerning the Plaintiff's assertion of her protected activity of asserting a valid religious objection to Insertive Testing which was automatically denied and never considered or accommodated by Defendant Kimberly-Clark.

**JURY DEMAND**

Plaintiff Fitzgerald demands a trial by jury on all claims and issues for which she has a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fitzgerald above-named prays for judgment in her favor and against Defendant Kimberly-Clark and for an Order of the Court as follows:

1.  Adjudging that Defendant Kimberly-Clark is liable to Plaintiff Fitzgerald for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Enjoining Defendant Kimberly-Clark from taking further illegal action against Plaintiff Fitzgerald in violation of both state and federal law, and Ordering Defendant Kimberly-Clark to take action to restore Plaintiff Fitzgerald to her position she would have enjoyed absent Defendant's illegal conduct;

3. Awarding Plaintiff Fitzgerald her costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4. Awarding such other relief as the Court may deem just and equitable, including without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated, which do not have a scientific basis.

Respectfully submitted this 9th day of August, 2024.


   /s/ John R. B. Long
JOHN R. B. LONG, ESQ.
South Carolina Bar No.: 76401 (Fed. ID No. 11866)
*Attorney for Plaintiff*

John R. B. Long, P.C.
411 Telfair Street
Augusta, Georgia 30901
(706) 868-8011 Telephone
(706) 868-8041 Fax
jlongattorney@aol.com

STATE OF SOUTH CAROLINA      )
                                    )       VERIFICATION

COUNTY OF AIKEN               )

          I, SARA YVONNE FITZGERALD, appearing first before the Notary Public, state that I am the Plaintiff in this matter.  I have read the attached Complaint and know or believe the contents and allegations are true to the best of my knowledge.

         This 9th day of August, 2024.

**SARA YVONNE FITZGERALD**

**SWORN TO AND SUBSCRIBED** before me,
this 9th day of August, 2024.

NOTARY PUBLIC
My Commission Expires:  12/29/2024

